CREAM CITY FOUNDRY COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*December 11, 1925—January 12, 1926.*

*Workmen's compensation: Non-compliance by employer with safety order: Failure of employee to use approved device: Failure to instruct employee not to use temporary one.*

The allowance of a fifteen per cent. increase in an award of the industrial commission, under sub. (5) (h), sec. 102.09, Stats., because of the failure of the employer to comply with the order of the commission, adopted pursuant to sec. 101.10, requiring portable electric lights, when used, to be equipped with a certain extension cord, is improper where the employee, who had been instructed to use a properly equipped portable light which the employer supplied, was injured while using a different cord, which had been equipped as a temporary cord for an electrical drill, though he had not been specifically instructed not to use this cord for a portable light.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge.   *Reversed.*

For the appellants there was a brief by *Bottum, Hudnall,
Lecher & McNamara* of Milwaukee, and oral argument by
*F. L. McNamara.*

For the respondent *Industrial Commission* there was a
brief by the *Attorney General* and *Mortimer Levitan* and
*F. C. Seibold,* assistant attorneys general, and oral argument
by *Mr. Seibold.*


OWEN, J.   On August 22, 1924, Felix Czajkowska was
an employee of the *Cream City Foundry Company.*   On
that day he came to his death, presumably, by reason of
electric shock from a brass shell socket on an electric light
extension cord, which was in his hand when his body was
found.   In due course the *Industrial Commission* made an
award for primary compensation, which was paid.   In en-
tering such award the *Commission* reserved the right to
determine whether the accident in question occurred by
reason of the failure on the part of the employer to comply
with any law of the state or any order of the *Industrial
Commission,* and to make such further findings and award
as the facts should warrant.   Thereafter, and on the 31st
day of January, 1925, the *Commission* made a further find-
ing and award, by which it found that Felix Czajkowska's
death was proximately caused by the failure of the *Cream
City Foundry Company* "to comply with Order No. 6037
of the General Orders on Existing Buildings, and that
applicant is, therefore, entitled to fifteen per cent. increased
death benefit," and made an award in favor of the widow
for an additional sum of $778.55.   The plaintiffs, the em-
ployer and the insurance carrier, brought this action in the
circuit court for Dane county, praying that such award
be vacated and set aside.   From a judgment of the circuit
court affirming the award of the *Industrial Commission* the
plaintiffs have appealed to this court.

Sec. 101.06, Stats., requires every employer to furnish a safe place of work for the employees, and to do everything reasonably necessary to protect the life, health, safety, and welfare of such employees. Sec. 101.10 empowers the *Industrial Commission* "To ascertain and fix such reasonable standards and to prescribe, modify and enforce such reasonable orders for the adoption of safety devices, safeguards and other means or methods of protection to be as nearly uniform as possible, as may be necessary to carry out all laws and lawful orders relative to the protection of the life, health, safety and welfare of employees in employments and places of employment or frequenters of places of employment." And "To ascertain, fix and order such reasonable standards, rules or regulations for the construction, repair and maintenance of places of employment and public buildings, as shall render them safe."

Pursuant to the authority so conferred, the *Industrial Commission* has adopted and promulgated comprehensive orders prescribing and fixing the kind and character of equipment, safeguards, and appliances that shall be used in and about the factories and other places of employment. Among other orders adopted and promulgated by the *Commission* is Order 6037, being a part of the General Orders on Existing Buildings, which provides as follows:

"Where portable electric lights must be used, the same shall be equipped with keyless socket of non-combustible, non-absorbent insulating material, large handle of non-absorbing insulating material, basket guard, proper reflector and special heavy duty cord of the re-enforced or similar type."

It was found by the *Industrial Commission* that the death of Czajkowska was proximately caused by a violation of this order on the part of the employer, and the primary compensation awarded to his widow was increased fifteen per cent. by reason of the provisions of sub. (5) (h), sec. 102.09, Stats., which provides: "Where injury is caused by

the failure of the employer to comply with any statute of the state or any lawful order of the industrial commission, compensation and death benefits as provided in sections 102.03 to 102.34, inclusive, shall be increased fifteen per cent."

The question presented is whether the *Industrial Commission* was justified in making a finding that the death of Czajkowska was proximately caused by the violation of Order 6037 above quoted. It appears without dispute that every department of the employer's plant was equipped with a portable electric light complying in every respect with the order under consideration. Czajkowska was a fireman and worked in the boiler room under Thomas Modlinski, the stationary engineer. A portable electric light was provided for the boiler room. It was kept in the compressor room, and Modlinski had instructed Czajkowska that whenever he had occasion to use a portable light to use the one which was kept in the compressor room. It appears, however, that sometime prior to the date of Czajkowska's death Modlinski had had occasion to use an electrical drill requiring an extension cord of about thirty feet. The drill had an extension cord of only five feet. He rigged up a temporary cord for use on this particular job, and after he was through using the cord he put it in a tool box and locked it up. It appears that Czajkowska had access to this tool box and was privileged to use tools therein contained as necessity therefor arose in the prosecution of his duties. Having occasion to use an extension light, he evidently took this cord from the box, attached thereto an electric light bulb, and was using the same at the time of his death. Modlinski had never specifically told Czajkowska not to use this temporary extension cord which he had placed in the tool box for a portable electric light. He had, however, according to the undisputed evidence, admonished Czajkowska to use the portable light kept in the compressor room.

The lower court relied upon the fact that the deceased

had not been specifically instructed not to use the cord which caused his death, and that he might have inferred that he was instructed to use the cord in the compressor room to prevent borrowing from other departments, and that he was not given to understand that he was to use the cord in the compressor room because there was any danger involved in using any other cord. Whether the deceased was specifically instructed not to use the particular cord which he did use we consider unimportant, but, if it be material, we think it plain that the affirmative instruction to the deceased to use the cord in the compressor room amounted to an instruction to use no other cord. By using the cord he did use he violated his instructions. The cord locked in the tool box was not intended to be used in connection with the portable light, and it is not reasonable to lay upon an employer the duty of specifically instructing employees with respect to every conceivable device which their ingenuity may enable them to rig up and use for purposes for which the same is not intended. When an employee is instructed to use a given implement or device for a certain purpose, it is tantamount to an instruction to use no other implement or device for that purpose. To require the employer to negative the use of every other device is to demand an anticipation as fertile and prolific as human ingenuity, and lays upon the employer a well-nigh impossible burden. But, as already stated, we think it is immaterial whether or not such negative instruction was given.

Sec. 101.28 subjects employers who violate the lawful orders of the *Industrial Commission* to a forfeiture of not less than $10 nor more than $100 for each such offense. Does the evidence in this case show a violation of the order which would subject the employer to the penalty of this statute? Plainly, it does not. The employer had punctiliously complied with the terms of this order. It had provided portable electric lights for use in every department and equipped in exactly the manner prescribed by the order.

Barron v. Industrial Comm. 188 Wis. 653.

Upon the evidence in this case it could not have been subjected to the penalty provided by sec. 101.28. If it could not have been subjected to the penalty of sec. 101.28 it must follow that it could not be subjected to the penalty prescribed by sub. (5) (h), sec. 102.09. It had complied with the order of the *Industrial Commission* when it had provided portable lights, according to the specifications of the order, to be used whenever and wherever portable electric lights were necessary to be used, and it did not become subject to either of such penalties when one of its employees, contrary to instructions, made use of an extension wire which he casually found in a tool box, never theretofore used or intended to be used in connection with a portable electric light.

It is plain that the award of the *Industrial Commission* under review is not supported by the evidence, and it should be vacated and set aside.

*By the Court.*—Judgment reversed, and cause remanded with instructions to vacate and set aside the award of the *Industrial Commission.*