BENTLEY BROTHERS, INC., Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Respondents.

*December 9, 1927—January 10, 1928.*

*Workmen's compensation: Safety order of industrial commission: That scaffold be safe: Validity of order.*

1. In order to justify the fifteen per cent. penalty imposed by sub. (5) (h), sec. 102.09, Stats., it must appear that an employee's injury was caused by the failure of the employer to comply with any statute of the state or any lawful order of the industrial commission. p. 613.
2. A general order of the industrial commission providing that safe and appropriate scaffolds shall be provided for workmen in exposed places is but a reiteration of the general rule declared in sec. 101.06, Stats., except that the order of the commission left out of consideration the question of reasonableness, was an attempt at legislation, and exceeded the authority of the industrial commission granted by sub. (3) and (4), sec. 101.10. p. 613.
3. Where a painter fell from a scaffold and was injured, and the scaffold complied with the requirements of the industrial commission, the award of the penalty imposed by sub. (5) (h), sec. 102.09, Stats., for failing to provide a "safe" place to work, was not authorized, as the result would be to penalize the employer for a delinquency of which it was not advised. p. 615.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Reversed.*

This is an action brought in the circuit court for Dane county by *Bentley Brothers, Inc.,* to vacate and set aside an award of the *Industrial Commission,* made in favor of *Herbert T. Childs,* who was injured while in the employ of *Bentley Brothers, Inc.,* which award included a fifteen per cent. penalty, under the provisions of sec. 102.09 (5) (h), because of the failure of said *Bentley Brothers, Inc.,* to comply with a safety order of the *Industrial Commission.* From a judgment in favor of the defendants, plaintiff brings this appeal.

For the appellant there were briefs by *Edgar L. Wood,* and oral argument by *Richard H. Tyrrell,* both of Milwaukee.

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

OWEN, J. *Herbert T. Childs* fell from a scaffold upon which he was working while engaged in painting the steel work in a garage as an employee of *Bentley Brothers, Inc.* The scaffold consisted of a two-inch plank, which was fourteen inches wide. One end of it was supported by a trellis or girder, the other by a step-ladder. It was about ten or twelve feet above the floor of the garage. *Childs* and another workman had been working upon this scaffold for several hours. They could paint only a space of four or five feet in width without moving the scaffold, which they were required to do every hour, or thereabouts. *Childs* was working on the end of the plank supported by the trellis or girder. His companion was working on the other end of the plank supported by the step-ladder. Besides the workmen, paint pails and dusters were on the plank. While thus engaged, *Childs* fell from the plank to the floor of the garage, sustaining injuries.

The evidence taken before the *Industrial Commission* fails to reveal the manner in which *Childs* fell or the reason for his fall. The plank did not break nor tip. Nothing on the plank was disturbed except a duster. In his application for compensation the applicant states that the accident was caused as follows: "By a defective steam pipe, which had been (was) failed to be screwed in securely and broke off when my weight strained on it. And broke off which pipe was in 'hand when fell." This would seem to give rise to the inference that *Childs* was hanging on a pipe as he leaned over painting, or that he lost his balance and grasped the pipe as he fell.

The findings of fact made by the *Industrial Commission* include the following: "that the applicant's said injury was caused by the failure of the respondent to comply with Order No. 3502 of the General Orders on Safety in Construction, adopted by the *Commission* and in effect at the time of said injury, in that applicant's injury was caused by reason of the failure of the respondent herein to provide a safe and appropriate scaffold for the applicant, who was working at the time of his injury in an exposed and elevated place; that because of the fact that said injury was caused by the failure of the respondent to comply with said safety order, the compensation to which applicant herein would otherwise be entitled must be increased by fifteen per cent., for which increased compensation the respondent herein is primarily liable and the insurance carrier herein is only secondarily liable." The appellant challenges the correctness of the fifteen per cent. penalty, only, included in the award.

General Order 3502 of the *Industrial Commission* provides: "Safe and appropriate scaffolds shall be provided for workmen in exposed or elevated places." This is but a sort of preamble to further provisions not only of General Order 3502 but General Orders 3503, 3504, 3505, and 3506 prescribing details to be observed in the construction of scaffolds, none of which, however, applies to the scaffold upon which the applicant was working, except a provision that "All wood used in scaffolds shall be of good quality, reasonably straight grained, and free from weakening knots and other defects." And the further provision that "In case of scaffolds for painting, paper hanging, and similar work (but not for mason work, plastering, or other work involving heavy materials), the spans of two-inch planks may exceed six feet if selected planks are used which have been tested with a load at least three times as great as the greatest loads which the planks are to carry."

In this case the plank did not break. The injury, there-
fore, was not caused by the failure of the employer to comply
with the provisions of the order just quoted. In order to
justify the fifteen per cent. penalty it must appear that the
injury was caused "by the failure of the employer to comply
with any statute of the state or any lawful order of the
*Industrial Commission."* The finding of the *Commission*
is to the effect that the injury was caused by the failure of
the respondent to comply with Order No. 3502, "in that
applicant's injury was caused by the failure of the respond-
ent herein to provide a safe and appropriate scaffold for the
applicant." Apparently the violation which the *Commission*
had in mind was not a disregard of any of the details
ordered to be observed in the construction of scaffolds, but
of that general provision of the order requiring "safe and
appropriate scaffolds to be provided for workmen in ex-
posed or elevated places." May a fifteen per cent. penalty
be predicated upon an alleged violation of this very general
provision? This is but the declaration of the most general
rule, and, as we shall show, is beyond the functions and pre-
rogatives of the *Industrial Commission.*

The order is but the reiteration of a general rule already
declared by statute. The language of the *Industrial Com-
mission,* however, is broader than the language of the stat-
ute. The statute requires every employer to furnish a safe
place of employment (sec. 101.06), and defines the term
"safe," as used in such connection, to mean "such freedom
from danger to the life, health, safety or welfare of em-
ployees . . . as the nature of the employment, or place
of employment, . . . will reasonably permit." Sec. 101.01
(11). It will thus be seen that while the statute requires
the place of employment to be as free from danger as the
nature of the employment will reasonably permit, the order
of the *Industrial Commission* lays out of consideration the
question of reasonableness and assumes to require all scaf-

folds to be safe. That this is an attempt at legislation, pure and simple, is apparent. That it is ineffective, and beyond the power of the *Industrial Commission,* is just as manifest. The power of the *Industrial Commission* to promulgate its general safety orders will be found in sec. 101.10. By sub. (3) thereof the *Commission* is authorized "To investigate, ascertain, declare and prescribe what safety devices, safeguards or other means or methods of protection are best adapted to render the employees of every employment and place of employment and frequenters of every place of employment safe, and to protect their welfare as required by law or lawful orders," etc. And by sub. (4) of the same section it is authorized "To ascertain and fix such reasonable standards and to prescribe, modify and enforce such reasonable orders for the adoption of safety devices, safeguards and other means or methods of protection to be as nearly uniform as possible, as may be necessary to carry out all laws and lawful orders relative to the protection of the life, health, safety and welfare of employees in employments and places of employment or frequenters of places of employment." In other words, it is the duty of the *Industrial Commission* to ascertain what safety devices or safeguards will make various places of employment as free from danger as the employment or place of employment may reasonably permit, and to require the installation of such safeguards and safety devices. That is the duty enjoined upon the *Industrial Commission,* and it marks the extent of its authority.

The General Orders of the *Industrial Commission* heretofore cited indicate that that body has considered the matter of scaffolds. As a result of such consideration it has prescribed rather comprehensive details of construction which must be observed. It must be presumed that the *Commission* went as far in prescribing safeguards in the construction of scaffolds as the various employments would reasonably permit. The attorney general suggested, on oral argument, that

there could have been a railing on the side of this plank. Turning to the orders of the *Industrial Commission* we find that they require a railing upon certain specified scaffolds, but painters' scaffolds are not specified. There could not be stronger evidence that the *Industrial Commission* deemed it unreasonable to require a railing on painters' scaffolds. If the penalty element of the award is permitted to stand, the plaintiff is penalized for delinquency of which it is not advised, and which the able attorney general has been unable to reveal to this court. We must conclude that it is without basis or justification.

*By the Court.*—Judgment reversed, and cause remanded with instructions to render judgment setting aside the award of the *Industrial Commission*.