Horvath, Plaintiff and Respondent, v. Industrial Commission, Defendant: Holcombe Joint School District No. 11 and another, Defendants and Appellants.

*November 30, 1964—January 5, 1965.*

254

For the appellants there was a brief by *Klueter, Larson & MacKenzie* of Wausau, and oral argument by *H. R. Klueter*.

For the respondent there was a brief and oral argument by *Rodney Lee Young* of Ladysmith.

BEILFUSS, J. The principal issue upon this appeal is, as stipulated by the parties before the examiner, did the injury take place in the course of employment and did it arise out of employment within the meaning of the Workmen's Compensation Act. As a necessary incident to our consideration of the principal issue, we must determine whether the findings of the commission, based upon facts herein, are conclusive.

The court has dealt with this problem on innumerable occasions. The applicable rules derived from the cases can be summarized from the following citations:

"The only question is whether there is credible evidence to support the commission's finding, . . . If there is such evidence, in the absence of fraud, the finding is conclusive upon the court and the finding must be sustained. Sec. 102.23, Stats. When facts are not in dispute but permit the drawing of different inferences therefrom, the drawing of one such permissible inference by the commission is an act of fact finding, and the inference so derived constitutes a finding of an ultimate fact, not a conclusion of law. *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 70, 56 N. W.

(2d) 525." *Hanz v. Industrial Comm.* (1959), 7 Wis. (2d) 314, 316, 96 N. W. (2d) 533.

"The respondents contend that whether or not the accident arose out of the employment presents a question of fact and the commission's finding of fact that it did not is conclusive upon this court. The facts in the instant case are undisputed. In such a situation if but one inference can reasonably be drawn from such undisputed facts a question of law is presented and the finding of the commission to the contrary is not binding on the reviewing court; but, if more than one inference can reasonably be drawn, then the finding of the commission is conclusive. *Schmidlkofer v. Industrial Comm.* (1953), 265 Wis. 535, 538, 61 N. W. (2d) 862." *Van Roy v. Industrial Comm.* (1958), 5 Wis. (2d) 416, 425, 92 N. W. (2d) 818.

"We consider that on the undisputed facts, and on the finding of the commission on the one material point of fact in dispute, only 'one inference is permissible, viz., that Chamberlain sustained his injury while performing service growing out of and incidental to his employment, and the accident arose out of his employment. Therefore only a question of law is presented, and we are not bound by the commission's determination to the contrary, whether it be treated as a finding of fact or a conclusion of law. *Schmidlkofer v. Industrial Comm.* 265 Wis. 535, 538, 61 N. W. (2d) 862." *Chamberlain v. Industrial Comm.* (1958), 5 Wis. (2d) 411, 414, 92 N. W. (2d) 829.

The material facts before us are not in dispute. Miss Horvath was employed by the school district. She was required as a part of her duties to advise and supervise the students belonging to the Future Homemakers of America. The purpose of the banquet was a "culmination of training as a part of economics of homes." The banquet was to be held in facilities rented by the school district at 8 p. m., which was not during regular hours. No adequate facilities were available to bathe or change clothes at the school or town hall. Miss Horvath returned to her home for that purpose. The accident and resulting injuries occurred while on this trip.

We conclude that conflicting reasonable inferences cannot be drawn from the undisputed facts insofar as they apply to Miss Horvath's statutory workmen's compensation claim. The finding of the commission is not conclusive but subject to review.

If Miss Horvath is to prevail, her right to benefits must be established within the provisions of sec. 102.03, Stats. Pertinent parts of that section are:

"102.03 CONDITIONS OF LIABILITY. (1) Liability under this chapter shall exist against an employer only where the following conditions concur:

" . . .

"(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. Every employe going to and from his employment in the ordinary and usual way, while on the premises of his employer, or while in the immediate vicinity thereof if the injury results from an occurrence on the premises, shall be deemed to be performing service growing out of and incidental to his employment; . . . The premises of his employer shall be deemed to include also the premises of any other person on whose premises service is being performed.

" . . .

"(f) Every employe whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

All of the principal contentions of the appellant have been considered by the circuit judge in a well-considered memorandum opinion. We agree. His memorandum opinion is in part as follows:

"The examiner concluded that Miss Horvath's accident took place in the course of her employment and arose out of her employment. Upon review the Commission concluded to the contrary with the following 'memorandum' comment:

" 'Applicant's work did not require that she travel, within the meaning of the provisions of 102.03 (1) (f). Her situation was the same as any office or factory worker who must go to the office or factory to work. Applicant was merely going from her employment and was not on the premises of her employment at the time of injury. The trip was not requested by the employer. She was going home just as she normally did after any day of work.'

"We disagree with the Commission's conclusion. This is not the routine case of an employe going to and from work under Sec. 102.03 (c). Miss Horvath was not going to and from work as she did under the regular routine of going from her home to work at school in the morning and going from school back to her home in the evening. Had she been injured under such circumstances she would not have been injured 'while performing service growing out of and incidental to her employment' sec. 102.03 (1) (c) Wis. Stats. *Makal v. Industrial Comm.* (1952) 262 Wis. 215, 54 N. W. (2d) 905; *Charney v. Industrial Comm.* (1946) 249 Wis. 144, 23 N. W. (2d) 508; *Selmer Co. v. Industrial Comm.* (1953) 264 Wis. 295, 58 N. W. (2d) 628; *Kerin v. Industrial Comm.* (1942) 239 Wis. 617, 2 N. W. (2d) 223.

"Miss Horvath was making her special trip from the town hall to her home and back for the single purpose of cleaning up after the heavy afternoon's preparation and dressing suitably for the banquet at 8 o'clock. She had to prepare for, attend and supervise this banquet as one of her specific duties under her contract of hire with the school board. She had no choice in the matter. Her special trip home to bathe and dress was for the direct benefit of her employer. There was no interruption in the continuity of her service for her employer that day. She had worked until 4:30 p. m., at the town hall with her girl students preparing for the banquet and then went straight home with two of the girls as passengers, expecting only to bathe and dress and then turn right around and come back to the town

hall, picking up the same two girl students and one other girl student on her way back. At no time did she leave her employment or deviate from it for any private or personal activity.

"*Githens v. Industrial Comm.* (1936), 220 Wis. 658, 265 N. W. 662; is distinguishable from the case at bar. In *Githens* the employee had done some outside inspection work and then went home from work to have his supper. He was injured on the way to the office after supper. His trip home for supper was an interruption of his service for his employer. He was injured on a trip *to* work. He was not injured while *at* work.

"See 1 Larson, Law of Workmen's Compensation, p. 226, sec. 16.12, Overtime or Rush Work:

" 'On the other hand, if the overtime work involves a special and extraordinary trip for the benefit of the employer, it has several times been held that the trip becomes part of the service.* A good example is that of a bookkeeper, who normally worked five days a week, but who was asked to come to the office for about an hour on Saturday morning to get out certain records and go over them with an accountant who was preparing an income tax report. Her husband drove her to the shop, waited for her in the car, and then drove her home. After she left the car, she crossed the public sidewalk, and about half-way between the sidewalk and her house, on premises owned by her and her husband, she slipped and fell. Compensation was based squarely on the special errand rule. Equally successful was the claim of an employee who, having been asked to hurry home for a quick supper and get back in the evening for special rush work in taking inventory, stumbled going into her own house. *And the same doctrine was applied when an employer told the employee to go home, change his clothes, and rejoin the employer for an evening business call.* But when a porter was asked to stay an extra half hour, and received permission to walk home and tell his wife that he would be late so that she would not worry, the trip was held to be solely for the employee's benefit, and a fall in the course of it was held noncompensable.' (Italics supplied.)

"It is sufficient that Miss Horvath did what she did because she was obliged to do so in fulfilling her contractual

commitments as an employee of the school board. The fact that she did not receive any special additional or extra compensation for such FHA work is immaterial. The fact that she was not reimbursed the cost of travel is immaterial. Since she was *at* work and not on her way *to* or *from* work, as in sec. 102.03 (1) (c), the fact that the accident happened off the premises of her employer is irrelevant. Thus using the 'analytical approach', as in *Pabst v. Department of Taxation* (1962) 19 Wis. (2d) 313, 322, 120 N. W. (2d) 77, we have concluded that only one reasonable inference can be drawn from the 'undisputed evidentiary facts' and that the conclusion we reach follows necessarily as a matter of law. *Van Roy v. Industrial Comm.* (1958) 5 Wis. (2d) 416, 425, 92 N. W. (2d) 818; *Cutler-Hammer Inc., v. Industrial Comm.* (1961) 13 Wis. (2d) 618, 632, 109 N. W. (2d) 468; *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm.* (1960), 10 Wis. (2d) 405, 410, 102 N. W. (2d) 754; *Mrs. Drenk's Foods v. Industrial Comm.* (1959), 8 Wis. (2d) 192, 197, 99 N. W. (2d) 172; *Brown v. Industrial Comm.* (1960) 9 Wis. (2d) 555, 569, 101 N. W. (2d) 788; *Stommel v. Industrial Comm.* (1962) 15 Wis. (2d) 368, 112 N. W. (2d) 904. . . .

"In our analysis of the 'personal comfort doctrine' cases cited by counsel, including *Van Roy v. Industrial Comm.* (1958) 5 Wis. (2d) 416, *American Motors v. Industrial Comm.* (1957) 1 Wis. (2d) 261, 83 N. W. (2d) 714 and *Krause v. Western Casualty & Surety Co.* (1958) 3 Wis. (2d) 61, 87 N. W. (2d) 875 we are impressed with the position taken by our court that an employee's injuries 'off the premises' of the employer while such employee is ministering to his 'personal comfort' are compensable when it is clear that the employee's acts in ministering to his personal comfort are necessarily incidental to his employment. The standards laid down by our court are clear. The act in question must bear a direct relationship to the employment and thus be in furtherance or advancement of the employer's interests. Such acts do not constitute *deviations* from the employment. They are part and parcel of the employment. They are easily distinguishable from similar acts incident to activities which are entirely private or personal to the employee. Hence we draw support from these 'personal com-

fort' doctrine cases in reaching our conclusion that Miss Horvath was, as a matter of law, 'performing service growing out of and incidental to her employment' at the time of her injury and our further conclusion that the accident causing injury to Miss Horvath did, as a matter of law, arise out of her employment."

We only want to add by way of emphasis the distinction between the facts of this case and the ordinary uncompensable act of "going to and from work." Miss Horvath was not going to her home because her day's work was done. Presumably she would make that trip after the banquet and ceremonies were completed. Nor was she going home for personal or private reasons on a "split shift" during off-working hours, such as an occasion where her evening duties did not reasonably require special attire. If adequate facilities for necessary grooming had been available at either the school or the town hall a different result could have been reached, if she chose, as a personal matter, to go home. Nor do we deem significant the fact that her home was 18 miles from the school. Because of modern facilities and ease of transportation common to all, we deem an employee's residence 18 miles from her place of employment to be within the reasonable expectation of her employer.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.